UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD P. ADAMS,
                          Plaintiff,

-v-

CO-OP CITY DEPARTMENT OF
PUBLIC SAFETY, *et al.*,
                          Defendants.

21-CV-2675 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Edward Adams, a resident of the housing development Co-Op City in the Bronx, New York, initiated this action against the owner and operator of Co-Op City, Riverbay Corporation, Co-Op City's internal public safety department, and four officers employed or previously employed by that department. Proceeding *pro se* and suing under 42 U.S.C. § 1983, Adams claims that Defendants violated his constitutional rights on three occasions spanning back to January 2018. Defendants move to dismiss, arguing (1) that Plaintiff's claims are untimely under the applicable statute of limitations and (2) that there is no private right of action for perjury. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**[1]

On March 25, 2018, Adams was accosted by six Co-Op City police officers, including Officer Lugo, Officer Charles, and Officer Ahmed. (ECF No. 4 (First Amended Complaint ("FAC")) at 1.) The officers kicked and choked him, obstructing his breathing. (*Id.*) As a result

---

[1] These allegations are drawn from the complaint and related documents appropriate to consider in *pro se* matters and assumed true for the purposes of the motion to dismiss.

of these actions, Adams lost consciousness and suffered several lacerations to his body. (*Id.*) After Adams was handcuffed, Officer Ahmed pepper-sprayed him. (*Id.*) Adams was treated for his injuries at Jacobi Hospital. (*Id.*)

Adams was then arrested and charged with leaving the scene of an accident and reckless endangerment. (*Id.*) Adams alleges that, although his car was parked, he was charged with hitting a car parked behind him. (*Id.*) Pursuant to that arrest, Officer Lugo seized and searched Adams' car. (*Id.*) Adams alleges that both these claims were dismissed but two charges against him pend in state criminal proceedings. (*Id.*)

Adams further alleges that, in January 2018, Officer Lugo entered his home without a warrant while Adams was away and pointed a gun at his family. (*Id.*) Adams believed that Officer Lugo entered his home due to the charges against Adams. (ECF No. 28 at 5.)

Adams alleges that false statements and fabricated evidence by Smith, Lugo, and Ahmed relating to the two 2018 incidents as well as additional testimony by a fourth Co-Op City officer, Nicholas Pasquale ("Pasquale") resulted in three separate felony charges against him in Bronx County criminal court, all of which eventually terminated in Adams' favor. (ECF No. 139 at 1.)

Adams also alleges that on March 20, 2020, an unidentified Co-Op City police officer entered his home without a warrant after Adams called 911 to report a family friend who was acting "belligerent" in his home. (*Id.*) Adams claims that he and this friend were already outside of his home when the police arrived at the scene and, further, that he specifically told the responding officers they were not permitted in his apartment, but that they entered anyway. (*Id.*)

B.   **Procedural History**

On March 25, 2021, Adams initiated this action *pro se* by filing a complaint against all but two of the current Defendants in this action. (*See generally* ECF No. 1.) On March 30, 2021, Adams filed his First Amended Complaint (FAC). (*See* ECF No. 4 ("FAC").) On

November 11, 2021, Defendants moved to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing, first, that the Court lacked subject matter jurisdiction because Adams pleaded only state-law tort claims and the parties are not diverse under 28 U.S.C. § 1332, and, second, that the FAC's state-law claims are time-barred under the applicable statute of limitations. (ECF No. 23.)

On August 8, 2022, the Court denied the motion in part, holding that, in addition to pleading state-law tort claims, the FAC, reviewed liberally given Adams' *pro se* status, also pleaded claims under 42 U.S.C. § 1983 for false arrest, excessive use of force, and unlawful search. *See Adams v. Co-Op City Dep't of Pub. Safety*, No. 21-cv-2675 (JPO), 2022 WL 3155827, at *2 – 3 (S.D.N.Y. Aug. 8, 2022). The Court held that Adams' state-law tort claims were time-barred under the one-year statute of limitations period provided by New York state law. *Id.* at *4. But the Court did not dismiss the section 1983 claims, explaining that "[t]hough some of Adams' claims arising under section 1983 may be time-barred, the parties have not yet briefed the statute of limitations issues as to the federal claims or whether the statute of limitations should be equitably tolled." The Court permitted Defendants to submit an additional motion addressing the merits, including the timeliness, of the federal claims within 30 days. *Id.*

On August 19, 2022, Adams filed a motion to again amend the complaint to cure deficiencies identified by the Court. (*See* ECF No. 112.) Defendants opposed, arguing that because the statute of limitations had tolled and Adams raised no equitable tolling arguments, amendment would be futile. (*See* ECF No. 117 (Def. Amend. Opp.).)

Separately, on September 6, 2022, Defendants moved to dismiss Adams' remaining federal claims. (ECF No. 126.) Defendants argue that two of those claims are time-barred and

3

that the FAC fails to state a claim as to the March 2020 events because Adams was arrested by a non-party NYPD officer, not any Defendant. (ECF No. 127 ("MTD Memo") at 4 – 5.)

On February 10, 2023, Magistrate Judge Barbara Moses granted Adams' request to file the Second Amended Complaint ("SAC"), naming two additional Defendants, Wells and Pasquale, both allegedly Co-Op City security officers. (ECF No. 145 at 1.) As to Defendants' futility arguments, Judge Moses construed those parts of Defendants' opposition papers as Defendants' motion to dismiss the SAC. (ECF No. 145 at 2.)

**II.    Legal Standard**

The party facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, a court "must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* A court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. *Walker v. Schult*, 717 F.3d 119, 12 n.1 (2d Cir. 2013).

**III.   Discussion**

Judge Moses construed Defendant's opposition papers to Adams' second motion to amend the complaint as a part of Defendants' motion to dismiss the SAC. This Court will proceed with the same approach. The Court first addresses Defendants' arguments raised in their

primary 12(b) moving papers (ECF No. 127 ("Def. Mot. Memo")) before considering Defendants' futility arguments raised in opposition to the motion to amend (Def. Amend. Opp.).

### A.     Statute of Limitations

Defendants first argue that Adams fails to state a claim as to the January 2018 and March 2018 police interactions because the "federal claims of assault, battery, and false imprisonment under § 1983 . . . are barred by the statute of limitations under New York law." (Def. Mot. Memo at 3.)

There is a three-year statute of limitations period for section 1983 claims in New York. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Applying that period, Defendants contend that the "time period for filing the claims related to the January 2018 [and] March 25, 2018 . . . incidents expired sometime in January 2021[ and] March 25, 2021," estimates with which the Court agrees. (Def. Mot. Memo at 3.)

Adams initiated this action on March 25, 2021. Plaintiff's claims related to the January 2018 incident are therefore dismissed with prejudice because Adams filed the claims outside the permissible three-year window. *See Pinaud*, 52 F.3d at 1156 – 57.

However, Adams claims related to the March 25, 2018 and March 22, 2020 interactions fall within the statutory period. While Defendants assert that Adams initiated this litigation on March 29 or 30, 2021 (Def. Mot. Memo at 2, 3, 4), they are mistaken. The Clerk's Office of this court marked Adams' Complaint received on March 25, 2021, and that is the appropriate date to be considered for filing. (*See* ECF 1 at 10 ("RECEIVED MAR 25 2021 CLERK'S OFFICE S.D.N.Y.").)

Accordingly, Defendants' motion to dismiss Adams' section 1983 claims on statute-of-limitations grounds is granted with respect to the January 2018 incident, but denied with respect to the later incidents.

**B.      Failure to Allege Liability Against Defendants as to March 20, 2020 Incident**

The March 20, 2020 incident allegations do not primarily concern assault, battery, or false imprisonment but relate only to alleged unlawful entry and/or search of Adams' home. Defendants argue that this fails to state a claim because the ticket Adams was eventually issued by an NYPD officer on March 20, 2020 "notes that the arrest was made by the New York City Police Department and a nonparty individual was the arresting officer." (Def. Mot. Memo at 4.) Because pleading "personal involvement" is necessary to a claim under section 1983, Defendants argue, Adams' allegations fail to state a claim. *See Tolliver v. City of New York*, No. 10-CV-3165 (PAC), 2011 WL 4964665, at *8 (S.D.N.Y. Oct. 11, 2018).

Defendants' argument is unpersuasive. Regardless of who ultimately effected the arrest, Adams adequately alleges that agents of the Co-Op City police force entered his home unlawfully in violation of his Fourth Amendment rights under the United States Constitution. Indeed, in his opposition papers, Adams produced two detailed and notarized affidavits from witnesses present as the 2020 incident unfolded. These witnesses specifically attested to the conduct of the Co-Op City officers, and these affidavits further buttress plausible claims to relief for illegal search and trespass. First, Giovanni Downer, Plaintiff's brother, averred that, despite being instructed not to, an officer "Wells" associated with Co-Op City entered and began looking through Adams' home. (ECF No. 137 at 32.) Although "Wells was . . . told to 'step out you don't have consent to be here'" by Adams, he continued searching through the home, according to Downer. (*Id.*) Second, Deborah Downer, Plaintiff's mother, offered a substantially similar explanation. Mrs. Downer states that Co-Op City officers were present at Adams' abode, searching inside, but that NYPD only arrived later and arrested Adams. (ECF No. 137 at 34.) Plaintiff plausibly alleges that the Co-Op City officers, acting under color of law, violated his Fourth Amendment rights prior to NYPD's arrival on the scene.

While these witness statements do not figure into Adams' Complaint or Amended Complaint, they were part of his opposition papers to the instant motion, and so appropriate for the Court to consider. *See Walker*, 717 F.3d at 122 n.1 ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987))). Thus, while Defendants may be correct that "Officer Wells [an agent of Co-Op City and Riverbay] was not involved in the arrest" (Def. Amend. Opp. at 7), Adams nonetheless plausibly alleges unreasonable search and wrongful trespass claims related to but distinct from the ultimate arrest.

Accordingly, Defendants' motion to dismiss as to Defendants Wells, Riverbay, and Co-Op City is denied. Defendants' motion to dismiss on behalf of Pasquale, Thomas, Lugo, and Ahmend, however, is granted with regard to the March 2020 incident, because there is nothing in either complaint nor in any of Adams' subsequent submissions alleging that any of these individuals were involved in the March 2020 incident.

**C.     Private Right of Action for Perjury**

As noted, Judge Moses converted Defendants' opposition to Adams' proposed Second Amended Complaint into a motion to dismiss under Rule 12(b)(6). (ECF No. 145.) The Court now considers whether any additional arguments raised there provide grounds for dismissal.

In their opposition papers, Defendants made the same statute-of-limitations arguments that the Court addresses above. Defendants also argue that amendment would be futile because the proposed Second Amended Complaint failed to state a claim against either Officer Wells or Officer Pasquale. Also for reasons explained above, the Court dismisses the claim as to Pasquale, but holds that Adams states a claim against Wells, Riverbay, and Co-Op City.

Defendants' opposition also raises one new argument which was not already raised in their motion to dismiss papers: They argue that the claims relating to "perjury" must be

7

dismissed because "there is no private right of action for plaintiff's perjury claims." (Def. Amend. Opp. at 5.)

The crux of Defendants' argument is that even if all the Co-Op City officers perjured themselves at various suppression hearings, grand jury proceedings, and, ultimately, in Adams' criminal trials in state court, the officer Defendants are entitled to immunity as testifying witnesses. (*Id.*) But Second Circuit precedent forecloses this line of argument. In *Coggins v. Buonora*, the court addressed "whether a law enforcement officer is entitled to absolute immunity as a grand jury witness . . . when a § 1983 plaintiff alleges that the officer withheld and falsified evidence in addition to committing perjury before [a] grand jury." 776 F.3d 108, 112 (2d Cir. 2015), *cert. denied*, 575 U.S. 1011, 1012 (2015). The *Coggins* court held that such a claim for fabrication of evidence would stand or fall based on "whether the plaintiff can make out the elements of his § 1983 claim without sorting to . . . [the officer's actual] testimony." *Id.* at 113.

The authorities cited by Defendants do not suggest a different result. Defendants cite *Miller v. Austin*, No. 20-CV-1958 (KMK), 2021 WL 1226770, at *4 (S.D.N.Y. March 31, 2021). But that case that case concerned different issue: a private plaintiff seeking criminal remedies (namely, incarceration) as a remedy in a civil lawsuit against another private individual. *See id.* ("Private individuals may not seek *criminal remedies* under 18 U.S.C. §§ 241, 245, 1621 or under 28 U.S.C. § 1746." (emphasis added) (internal citations omitted))).

Adams' allegations sufficiently make out a section 1983 claim for fabrication of evidence against Officers Smith, Lugo, Ahmed, and, based on allegations in the Second Amended Complaint, Pasquale. The allegations in the SAC assert a years-long conspiracy by these officers, as well as their employers, Riverbay and Co-Op City, to fabricate a course of criminal

8

conduct, allegedly resulting in three separate prosecutions of Adams. Adams was acquitted or the charges were dropped in all three.

Finally, Defendants argue that, even if there were a private right of action on these claims, the statute of limitations has run. (Def. Amend. Opp. at 5 – 6.) But on this point too, Defendants are incorrect. In *McDonough v. Smith*, 139 S. Ct. 2149, 2153 (2019), the Supreme Court addressed the issue of when the statute of limitations for a section 1983 claim based on evidence fabrication accrues. The Court adopted a rule that "[o]nly once the criminal proceeding has ended in [a] defendant's favor, or a resulting conviction has been invalidated[,] . . . will the statute of limitations begin to run" on his section 1983 claims regarding the false evidence used against him. *Id.* at 2158.

Here, Adams alleges that the final criminal proceeding in which Lugo, Smith, and Ahmed allegedly conspired to fabricate evidence against him concluded in his favor in the Supreme Court for Bronx County on September 20, 2022.[2] (ECF No. 138.) Based on these allegations, the three-year statute of limitations period on the fabrication of evidence claims against Smith, Lupo, and Ahmed acting as agents of Co-Op City and/or Riverbay began as late as September 20, 2022.

Accordingly, the Court holds that Adams plausibly states a section 1983 claim for fabrication of evidence against Defendants Pasquale, Smith, Lupo, Ahmed, Co-Op City, and

---

[2] The Court notes that a different, shorter statute of limitations could apply to these claims if the Co-Op City officers were deemed to be private individuals. Indeed, in its previous opinion in this case, the Court invited defense counsel to brief this issue, noting that "the parties have not yet briefed whether Co-Op City is a state actor or was acting under color of state law for purposes of this case." *See Adams*, 2022 WL 3155827, at *5. However, Defendants do not raise this issue in their Rule 12 filings.

9

Riverbay. However, as Adams includes no allegations tying Defendant Wells to evidence fabrication, the evidence fabrication claim against Wells is dismissed.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Defendants shall file an answer to the surviving claims within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at ECF Number 126.

SO ORDERED.

Dated: September 25, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge